UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THE SHINNECOCK INDIAN NATION,
Plaintiff,

                                      Civil Action

- against -                             No. CV-06-5013

DIRK KEMPTHORNE, SECRETARY OF          (Bianco, J.)
THE DEPARTMENT OF THE INTERIOR, et al.,    (Lindsay, M.J.)
Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## SUPPLEMENTAL DECLARATION  OF DARRELL R. STRAYHORN

I, Darrell R. Strayhorn, do hereby state as follows:

1.      I am employed by the United States Department of the Interior ("Interior").

2.      I hold the position of Freedom of Information Act ("FOIA") Appeals Officer.  I have held

this position since March 2005.

3.      My duties as FOIA Appeals Officer include determining whether to accept appeals filed

with Interior under FOIA for processing and, if the appeal is properly filed, determining

the issues a FOIA requester is challenging in the FOIA appeal.  I also make the final

decision for Interior on the disposition of all properly filed FOIA appeals.

4.      In order to make the decision on a properly filed FOIA appeal, I personally review any

documents that a bureau or office withheld and/or redacted that are the subject of the

FOIA appeal.

5.      Paragraphs 118 through 123 of the Second Amended Complaint in this matter refer to a
        FOIA request the plaintiff submitted to Interior and the plaintiff's subsequent appeal of
        the agency's decision to withhold certain records.

6.      Paragraph 118 of the Second Amended Complaint refers to the plaintiff's FOIA request
        dated July 20, 2007.  Attached as Exhibit 1 is a true and accurate copy of the referenced
        July 20, 2007, FOIA request.

7.      Paragraph 119 of the Second Amended Complaint refers to the Office of Federal
        Acknowledgment's ("OFA") letter dated August 17, 2007, responding to the plaintiff's
        FOIA request.  Attached as Exhibit 2 is a true and accurate copy of the referenced
        August 17, 2007, letter.

8.      Paragraph 120 of the Second Amended Complaint refers to plaintiff's letter dated
        September 28, 2007, appealing the partial denial of its FOIA request.  Attached as
        Exhibit 3 is a true and accurate copy of the referenced September 28, 2007, FOIA appeal.

9.      Paragraph 121 of the Second Amended Complaint refers to Interior's letter dated
        November 9, 2007, acknowledging receipt of the plaintiff's FOIA appeal.  Attached as
        Exhibit 4 is a true and accurate copy of the referenced November 9, 2007, letter.

10.     Paragraph 123 of the Second Amended Complaint refers to Interior's letter dated May 14,
        2008, denying the plaintiff's FOIA appeal.  Attached as Exhibit 5 is a true and accurate
        copy of the referenced May 14, 2008, letter.

11.     The Shinnecock plaintiff's July 20, 2007, FOIA request generally sought 21 categories of
        documents pertaining to a March 1979 "Report" that attorneys in the Office of the

2

Solicitor prepared for the former Solicitor in connection with the Shinnecock litigation request seeking assistance from the United States in the recovery of approximately 3,150 acres of land in the Town of Southampton, New York.

12.   By letter dated August 17, 2007, OFA responded to the Shinnecock FOIA request by releasing in full a two-page September 4, 1979, letter from the former Solicitor, Leo Krulitz, to the plaintiff's attorneys ("Krulitz letter"). The OFA also withheld two documents in their entirety based on the attorney work-product and deliberative process privileges of FOIA exemption 5.

13.   On September 28, 2007, the Shinnecock plaintiff filed a FOIA appeal "challeng[ing OFA's] assertion of work-product immunity and deliberative process privilege under Exemption 5 of FOIA."

14.   In responding to the FOIA appeal, I read both documents. Following my review, I agreed with OFA's invocation of the deliberative process and attorney work-product privileges of FOIA exemption 5 to withhold both documents in their entirety.

15.   On May 14, 2008, Interior responded to the Shinnecock plaintiff's FOIA appeal and concluded that OFA "properly invoked the deliberative process and attorney work-product privileges of FOIA exemption (5) as bases to deny [the plaintiff] access to the documents at issue in the appeal." Interior fully adopted OFA's rationale for withholding the two documents as part of its decision and denied the Shinnecock plaintiff's appeal.

16.   Neither document is dated nor signed, but based on my extensive experience analyzing documents in the context of adjudicating FOIA appeals, I concluded from their content

3

that they are draft memoranda that preceeded the Krulitz letter.

17.     Both memoranda indicate on their face that they are from the Associate Solicitor, Indian Affairs, to the Solicitor.  The subject matter of each memorandum is "Shinnecock Land Claim," which is the subject matter of the Krulitz letter.

18.     One memorandum consists of 25 pages of doubled-spaced typed text on non-letterhead paper with numerous handwritten notes, questions, and edits by one or more other persons on 23 of its pages ("first memorandum").  The other memorandum consists of 18 pages of single-spaced typed text on Office of the Solicitor letterhead ("second memorandum").  Since the text of the second memorandum incorporates some of the handwritten edits and much of the typed text contained on the first memorandum, I determined that the first memorandum is a draft of the second memorandum.

19.     On the final page of the second memorandum, the typed name of "Thomas W. Fredericks" follows the final paragraph, but there is no associated signature with this name, nor any other indication that it was signed, such as the marking "/s/."

20.     The author or authors of the memoranda are not known but are reasonably believed to have been attorneys within the Division of Indian Affairs, Office of the Solicitor, the Division responsible for providing legal advice to the Solicitor on land claims under the Non-Intercourse Act, which is the statute referenced in the draft memoranda and in the Krulitz letter.

21.     A copy of the second memorandum in my possession includes at the top of each page, "08/09/2007 17:45 FAX 3036739839."  Another copy in my file does not include the fax number.  Neither copy includes any of its attachments.

4

22.   I asserted the deliberative process and attorney work-product privileges over the two

memoranda because I determined that they were draft work-product documents prepared

to assist the former Solicitor in reaching the decision contained in the September 4, 1979,

letter.  The Krulitz letter was Interior's response to the Shinnecock plaintiff's request that

the Department assist in the recovery of approximately 3,150 acres of land allegedly

alienated in violation of the Non-Intercourse Act.  The Krulitz letter refers to a "Report"

presented to him in March, five months before his decision, prepared by attorneys in the

Office of the Solicitor.  Although the letter does not indicate that it adopts or rejects any

conclusions or recommendations that may have been included in the Report, it appears to

be a reference to a final version of the second memorandum.

23.   For purposes of the attorney work-product privilege, I applied the following principles:

(1) the withheld material must be prepared by an attorney in contemplation of litigation,

(2) include legal analyses or opinion or recommendations, and (3) may reference

settlement.

24.   I concluded that the OFA properly invoked the attorney work-product privilege to

withhold both documents because they each discuss the prospect of litigating a

Shinnecock land claim.  In addition, the contents of each document reflect the preliminary

thoughts of its author(s) on Interior's litigation strategies, opinions, and legal theories.

Further, it is my understanding that the Shinnecock plaintiff presently is pursuing its land

claim, and at the time of the FOIA appeal decision to withhold the two documents, had

requested Interior's assistance in that land claim and also had initiated litigation against

Interior with respect to its tribal status and its land claim.   The legal analyses in the

5

memoranda are not limited to the specifics of the Shinnecock claim but implicate the Non-Intercourse Act in general, and thus could implicate other land claim litigation. Thus, I concurred with the OFA's determination that both documents were protected in their entirety from disclosure by the attorney work-product privilege.

25.    In my document review of the two memoranda, to determine whether the deliberative process privilege protected the document,  I applied the following principles: (1) the privilege protects from disclosure only those documents that reflect advisory opinions, recommendations, or deliberations of specific policies or decisions; (2) withheld material must be opinion, deliberation, advice, recommendation, analysis, or evaluation by those responsible for advising on the advantages and disadvantages of a proposed agency decision or policy; (3) withheld material must be directed toward formulation of a policy or decision being debated within the agency at the time; (4) withheld material must be pre-decisional, must contain advice, analysis or recommendations, and must not merely comment upon already established policy; and (5) withheld material that is factual information must be so intertwined with privileged information that the factual information cannot be released without disclosing privileged information as well. Purposes of the deliberative process privilege include protecting the candid, open discussion necessary to develop policy without the chilling effect of public release, and avoiding public confusion that might result from disclosure of reasons and rationale that were not in fact the grounds for an agency's action.

26.    I also concluded that the OFA properly invoked the deliberative process privilege to withhold both documents because I determined that they are both predecisional and

6

deliberative. I found that both documents are predecisional because their contents indicate that they preceded the decision contained in the Krulitz letter and that they were prepared to aid former Solicitor Krulitz in reaching a final decision on the Shinnecock plaintiff's land claim litigation request. Indeed, the plaintiff's FOIA request, Exhibit 1, characterizes the report "as a predicate" for the Krulitz letter. As for the deliberative nature of the documents, the fact that neither document was signed nor dated led me to conclude that the contents of each document were not final, but rather were tentative and subject to change. The draft nature of the documents was more apparent with the first memorandum because of the handwritten edits made throughout the document, which merely reflected the editors' opinion on what should be included in the final version of the document. Moreover, I determined that release of the documents could have an adverse effect on Interior's deliberations as it relates to the Shinnecock plaintiff's land claims by chilling the free flow of opinion that is necessary to develop policy and because the release could confuse the public by revealing opinions that may not have been adopted by the agency. In addition, personnel in the Division of Indian Affairs (which is the office where the documents originated) who are familiar with the issues surrounding the Shinnecock plaintiff's land claim advised me that Interior has not adopted either document formally or informally and, indeed, there is nothing on the record before me to contradict those statements. Because my analysis led me to conclude that both documents are both predecisional and deliberative, I found that the OFA properly withheld them under the deliberative process privilege. I also considered whether there was any factual

7

information that could be segregated and released from the documents and concluded that there was not, as the very process by which a draft document evolves into a final document is itself a deliberative process warranting protection, and disclosure of any of the information in either document would reveal the Office of the Solicitor's predecisional deliberations. Therefore, I concluded that the OFA properly withheld both documents in their entirety under the deliberative process privilege.

27.     In view of the plaintiff's request that Interior conduct another review of the documents in light of President Barack Obama's January 21, 2009, Memorandum on the FOIA, and in light of the issues raised by the Court in this action, I conducted a second review of the documents. After that review, Interior has determined to discretionarily release some of the information from the second memorandum.

28.    In conducting my second review of the documents, I applied the principals described in ¶¶ 23 and 25 above in conjunction with the new administration's policy under FOIA. I have concluded that disclosure of some of the information in the second memorandum would not significantly interfere with Interior's litigation strategies or predecisional deliberations. I have conducted a line-by-line, page-by-page review of the second memorandum to identify the information that can be segregated and released to the plaintiff. A copy of this redacted memorandum is attached as Exhibit 6.

29.    I concluded again that release of the second memorandum in unredacted form also would have a chilling effect on open and candid discussions and would inhibit Interior's ability to handle its day-to-day operations. An unredacted release of the second memorandum

would inhibit Interior's ability to evaluate candidly available options before formulating litigation strategy and carrying out its responsibilities, and to obtain the advice of the Office of the Solicitor attorneys on legal matters without the chilling effect of public release.

30.     I have also conducted a second review of the first memorandum and determined that there is no information that can be segregated and released without causing the harms that the attorney work-product and deliberative process privileges were designed to protect. Therefore, the first memorandum is withheld in its entirety.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on the 13th day of February, 2009.

Darrell R. Strayhorn
FOIA Appeals Officer

9