# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

Nº 06-CV-5013 (JFB) (ARL)

---

THE SHINNECOCK INDIAN NATION,

Plaintiff,

VERSUS

DIRK KEMPTHORNE, SECRETARY OF THE DEPARTMENT OF THE INTERIOR, JAMES E. CASON, ASSOCIATE DEPUTY SECRETARY OF THE DEPARTMENT OF THE INTERIOR, AND THE UNITED STATES DEPARTMENT OF THE INTERIOR,

Defendants.

---

**MEMORANDUM AND ORDER**
September 9, 2009

---

JOSEPH F. BIANCO, District Judge:

The Shinnecock Indian Nation (hereinafter, the "Nation" or "plaintiff") commenced this action on September 14, 2006 against defendants Dirk Kempthorne, in his capacity as Secretary of the Department of the Interior, George T. Skibine, in his capacity as Acting Deputy Secretary of the Department of Interior for Policy and Economic Affairs – Indian Affairs, James E. Cason, in his capacity as Associate Deputy Secretary of the Department of the Interior, and the United States Department of the Interior (collectively, "Interior" or "defendants"), pursuant to the Administrative Procedure Act, 5 U.S.C. § 551, arising from Interior's alleged continuing refusal to acknowledge the federal Indian tribal status of the Nation and to fulfill its trust obligations regarding the Nation's land claim pursuant to the Indian Non-Intercourse Act of

1834 (hereinafter, the "Non-Intercourse Act"), 25 U.S.C. § 177.

On August 15, 2008, the Nation filed a second amended complaint in this action, which added two claims, the fifth and sixth claims for relief, to the complaint.[1] The subject of the instant Memorandum and Order is the sixth claim in the second amended complaint,

---

[1] The Court's prior Memorandum and Order dated September 30, 2008, with which the Court assumes familiarity, granted in part and denied in part defendants' motion to dismiss the first amended complaint. Because the second amended complaint added two new claims that are wholly discrete from those addressed in the September 30, 2008 decision, this Memorandum and Order in no way impacts the plaintiff's fourth claim for relief (the "unreasonable delay" claim), which survived defendants' motion to dismiss.

which seeks to compel, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the full disclosure of two documents, the first of which is being withheld in its entirety and the second having been produced in redacted form by Interior (hereinafter, "the FOIA claim"). Specifically, Interior has invoked the attorney work product doctrine and the executive deliberative process privilege to withhold these documents from full disclosure, pursuant to 5 U.S.C. § 552(b)(5) (hereinafter, "Exemption 5").

Defendants now move for summary judgment with respect to the FOIA claim, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, arguing that they have sufficiently responded to the FOIA request and that the affidavits submitted in support of their motion adequately establish that the remaining material being withheld is exempt from disclosure. Defendants request, in the alternative, *in camera* review of the two documents. The Nation counters that Interior has failed to sustain its burden of demonstrating that Exemption 5 applies to the documents at issue to justify their nondisclosure and cross-moves for summary judgment in its favor.

On January 29, 2009, during oral argument on the cross-motions, the Court ordered defendants to submit a supplemental affidavit setting forth in more detail the basis for nondisclosure of the documents. After reviewing the supplemental submissions made by both parties thereafter, on July 15, 2009, the Court ruled, in its discretion, that it would review the two documents *in camera*. Having conducted a *de novo* review of the agency's position on the FOIA request (including a careful review of the documents *in camera*), for the reasons set forth below, the Court finds that the withheld material properly falls within

the protections of Exemption 5 to FOIA. Accordingly, summary judgment is granted in favor of the defendants, and plaintiff's cross-motion is denied.

## I. BACKGROUND

### A. FACTS

The Court has taken the facts described below from the parties' affidavits, exhibits, and respective Rule 56.1 statement of facts.[2] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

By letter dated July 20, 2007, an attorney acting on behalf of the Nation made a request to Interior, pursuant to FOIA (hereinafter, "the FOIA request"), generally seeking twenty-one (21) categories of documents relating to a March 1979 report that attorneys in the Office of the Solicitor for the United States Department of the Interior prepared for a former Solicitor to assist him with his decision on the Nation's litigation request seeking assistance from the United States in the recovery of approximately 3,150 acres of land in the Town of Southampton, New York (hereinafter, "the Nation's land claim request"). (Pl.'s 56.1 ¶ 1.) This report (hereinafter, the "March 1979 report") was referred to in a September 4, 1979 letter by Leo M. Krulitz, then Solicitor of the Department of the Interior, to the Nation's attorneys (hereinafter, the "Krulitz letter"), which

---

[2] Where only one party's 56.1 statement is cited, the other party does not dispute the facts alleged, or there is no evidence controverting such fact, unless otherwise noted.

responded to the Nation's land claim request. (Pl.'s 56.1, Exh. A.)

By letter dated August 17, 2007 from the Director of the Office of Federal Acknowledgement ("OFA"), Interior responded to the FOIA request by releasing in full one responsive two-page letter. (Pl.'s 56.1. ¶ 2; Strayhorn Supp. Decl., Exh. 2.) In the OFA's August 17, 2007 letter, the Nation was further advised that two documents were being withheld pursuant to Exemption 5 to FOIA, based upon the deliberative process privilege and the attorney work product doctrine. (Pl.'s 56.1 ¶ 2.) The August 17, 2007 letter from the OFA described the two documents (hereinafter, "the documents" or "the memoranda") as follows:

> The first document is an undated, double-spaced draft memorandum from the Associate Solicitor, Indian Affairs, to the Solicitor, concerns the Shinnecock land claim; and is 25 pages long. It includes handwritten notes. The second document is a single-spaced, 18-page memorandum, similar to the prior draft. It is undated and unsigned.

(Strayhorn Supp. Decl., Exh. 2.)[3]

The Nation appealed the partial denial of its FOIA request by letter dated September 28, 2007. (Strayhorn Decl., Exh. 3.) In its appeal, the Nation argued that the privileges asserted by the OFA were not sufficiently explained, had been waived, or were inapplicable because of Interior's publication of the staff memoranda as final decisions or made meaningless by the passage of time and, furthermore, that the memoranda should be released to the Nation as the beneficiary of the trust decisions contained within the memoranda. (*See* Stayhorn Supp. Decl., Exh. 3, at 11.) The Nation further argued that, in any event, the deliberative process privilege did not protect factual material and a redacted copy of the withheld documents containing factual information and conclusions should be disclosed. (*See* Stayhorn Supp. Decl., Exh. 3, at 11.)

By letter dated November 9, 2007, Interior acknowledged receipt of the Nation's appeal. (Strayhorn Supp. Decl. ¶ 9.) On May 14, 2008, Interior responded to the FOIA appeal, concluding that the deliberative process privilege and attorney work product doctrine were properly invoked pursuant to Exemption 5 and fully adopting the rationale of the Bureau of Indian Affairs for withholding the two documents at issue. (Pl.'s Decl. ¶ 7;[4] Strayhorn Supp. Decl., Exh. 5.)

B. Procedural History

The Nation filed its initial complaint in this action on September 14, 2006. On October 5, 2007, plaintiff filed its first amended complaint, and on December 14, 2007, defendants moved to dismiss the first amended

---

[3] The first document was located in the files of Interior's Office of Federal Acknowledgment. The second document was provided to the OFA by Scott F. Keep, an Assistant Solicitor in the Division of Indian Affairs, who received the document via facsimile in August 2007 by a former Associate Solicitor, Thomas W. Fredericks. (*See* Keep Decl. ¶¶ 1-11).

[4] Paragraph 7 of defendants' Rule 56.1 statement was misnumbered as a second paragraph 5.

complaint. The Court denied defendants' motion to dismiss with respect to the fourth claim for relief in the first amended complaint and granted it with respect to all other claims on September 30, 2008.

By letter to the Court dated May 8, 2008, the Nation requested leave to file a second amended complaint. The Court granted such leave, and plaintiff filed a second amended complaint on August 15, 2008, the sixth claim of which is the subject of the instant motion.

On October 28, 2008, defendants moved for, *inter alia*, summary judgment with respect to plaintiff's sixth claim for relief.[5] The Nation submitted its opposition to Interior's motion on December 19, 2008, and Interior replied on January 16, 2009. Oral argument was held on January 29, 2009. During oral argument, the Court agreed with the Nation that the government's initial declarations submitted in support of its motion lacked the requisite specificity to establish the applicability of an exemption to disclosure, *see, e.g.*, *Halpern v. FBI*, 181 F.3d 279, 293 (2d Cir. 1999), and directed defendants to submit a supplemental affidavit establishing, with sufficient detail, the basis for any Exemption 5 privilege with respect to the documents at issue.

Defendants thereafter filed a supplemental letter and declarations in support of their motion on February 17, 2009, and further disclosed, in redacted form, substantial portions of the second document at issue, in light of President Barack Obama's Memorandum on the FOIA, dated January 21, 2009. Plaintiff responded via letter brief on February 20, 2009.

After consideration of the supplemental declarations and submissions made by the parties, on July 15, 2009, during a conference held with the parties to address various pending motions in this case, the Court directed, in its discretion and in light of the substantial disclosure of the second document in redacted form, as well as the small number of documents and pages at issue, that the two documents be submitted under seal for *in camera* inspection. These documents were then submitted to the Court, in unredacted form, on July 20, 2009.

## II. Standard of Review

The standard for summary judgment is well-settled. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006).

In a motion for summary judgment in a FOIA case, the burden of justifying nondisclosure lies with the defendant agency. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823.

---

[5] At that time, defendants also moved to dismiss plaintiff's fifth claim for relief (the "equal protection claim"). Oral argument was conducted on both pending motions on January 29, 2009. By letter dated August 31, 2009, the Nation requested, with the consent of Interior, that the Court stay the equal protection claim pending resolution of the Nation's petition for federal acknowledgment, a preliminary determination on which the parties anticipate to occur in December 2009. Accordingly, the Court hereby orders a stay of the fifth claim for relief pending Interior's processing of the Nation's petition, in accordance with the Stipulated Order entered by this Court on May 26, 2009.

"It is the responsibility of the federal courts to conduct *de novo* review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure. The burden of proof, upon such review, rests with the agency asserting the exemption, with doubts resolved in favor of disclosure." *A. Michael's Piano. Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994), *cert. denied*, 513 U.S. 1015 (1994) (quoting *Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 508 (2d Cir. 1992)).

Summary judgment is appropriate where there are "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption[.]" *Carney*, 19 F.3d at 812. When agency submissions are adequate on their face, a district court has the discretion to "forgo discovery and award summary judgment on the basis of affidavits." *Id.* (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980)); *accord Maynard v. C.I.A.*, 986 F.2d 547, 556 n.8 (1st Cir. 1993); *Simmons v. U.S. Dep't of Justice*, 796 F.2d 709, 711-12 (4th Cir. 1986). The affidavits or declarations must contain "'*reasonable specificity* of detail rather than merely conclusory statements'" and must not be "'called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994) (citation omitted)) (emphasis in original). Affidavits submitted by an agency are given a presumption of good faith. *See Carney*, 19 F.3d at 812.

More specifically, a defendant agency may meet its burden by submitting affidavits " to the court that describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure." *Halpern*, 181 F.3d at 291 (quoting *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 480 (D.C. Cir. 1980), and discussing the development of the standard first set forth in *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974)). The "*Vaughn* affidavit" serves three functions: "[1] it forces the government to analyze carefully any material withheld, [2] it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, [3] and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." *Id.* (quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)).

III. DISCUSSION

As stated *supra*, the sixth claim of the second amended complaint alleges that defendants have unlawfully withheld requested information, in violation of 5 U.S.C. § 552, and seeks injunctive relief enjoining Interior from withholding the two memoranda identified in Interior's August 17, 2007 letter. Defendants seek summary judgment in their favor on the grounds that the remaining portions of the documents in question have been statutorily exempted from disclosure under FOIA, pursuant to Exemption 5.

After *de novo* review of defendants' denial of plaintiff's FOIA request with respect to the two memoranda, the Court agrees with the defendants regarding the propriety of withholding the remaining information pursuant to Exemption 5. Specifically, after *in camera* review of the documents, the Court concludes that the redacted version of the second document meets the disclosure

requirements of FOIA because the remaining redacted information is properly withheld under Exemption 5. Moreover, with respect to the first document, the Court concludes that there is no non-exempt information contained therein that has not already been disclosed within the contents of the second document and that is reasonably segregable from exempt material. Accordingly, defendant's motion for summary judgment on the FOIA claim is granted in its entirety, and plaintiff's cross-motion is denied.

## A. Exemption 5

The central purpose of FOIA is to "ensure an informed citizenry . . . [which is] needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *accord U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citation omitted). FOIA confers jurisdiction on the district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989). However, "jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records. Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *Tax Analysts*, 492 U.S. at 142 (internal quotations and citation omitted).

By the terms of the statute, any person has a right to access federal agency records, unless those records are protected from disclosure by one of nine exemptions. *See* 5 U.S.C. § 552(c); *A. Michael's Piano. Inc.*, 18 F.3d at 143; *Ortiz v. Dep't of Health and Human Servs.*, 70 F.3d

729, 732 (2d Cir. 1995), *cert. denied*, 517 U.S. 1136 (1996). These exemptions are to be narrowly construed, in light of FOIA's objective of the fullest possible agency disclosure "consistent with a responsible balancing of competing concerns included in [the] nine categories of documents exempted[.]" *Halpern*, 181 F.3d at 284; *accord FBI v. Abramson*, 456 U.S. 615, 630 (1982); *see also Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) ("The Supreme Court has counseled that these exceptions are to be interpreted narrowly in the face of the overriding legislative intention to make records public.") (citing *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001)).

Implicated in this case is Exemption 5. *See* 5 U.S.C. § 552(b)(5). Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption thus protects documents ordinarily privileged in the civil discovery context. *See FTC v. Grolier, Inc.*, 462 U.S. 19, 26 (1983). Accordingly, "[c]ourts have interpreted Exemption 5 to encompass traditional common-law privileges against disclosure, including the work-product doctrine, and executive, deliberative process and attorney-client privileges." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005).

The first question to be addressed on this motion is whether the information withheld properly falls within the scope of Exemption 5.[6] Here, defendants claim that the

---

[6] As noted *supra*, the Nation first argued that the government's declarations submitted in support of its motion lacked the requisite specificity required by the *Vaughn* standard. *See generally Halpern v.*

*FBI*, 181 F.3d 279, 293 (2d Cir. 1999) (discussing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) and subsequent caselaw). Indeed, because the requested information is solely in the hands of the defendant agency, the burden is on it to justify the propriety of nondisclosure. *See, e.g., Reporters Comm. For Freedom of the Press*, 489 U.S. at 755. As discussed in the procedural history, on January 29, 2009, the Court agreed with the Nation that the government's initial declaration was insufficient to properly permit the Court's *de novo* review and directed defendants to provide a supplemental affidavit. Despite the additional specificity provided in the supplemental declarations, which satisfied the *Vaughn* standard, the Court ruled, on July 15, 2009, in its discretion and in an abundance of caution, that the two documents be submitted under seal for *in camera* inspection. Although the Court is mindful that *in camera* review should be "restrained," *Halpern*, 181 F.3d at 292 and is the exception, not the rule, *see Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988), *in camera* review of the contested documents is specifically authorized by FOIA, *see* 5 U.S.C. § 552(a)(4)(B), and permitted in this Circuit "where the record showed the reasons for withholding were vague or where the claims to withhold were too sweeping or suggestive of bad faith, or where it might be possible that the agency had exempted whole documents simply because there was some exempt material in them." *Halpern*, 181 F.3d at 292. "Most often, an *in camera* inspection has been found to be appropriate when only a small number of documents are to be examined." *Donovan v. FBI*, 806 F.2d 55, 59 (2d Cir. 1986), *abrogated on other grounds by U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 170 (1993). In this case, only two documents, both about twenty pages in length and of similar content, are at issue, making the burden of *in camera* review relatively light. Not only are the number of documents small, but the dispute turns on the contents of the withheld documents, not on the parties' interpretations of the documents, and thus review of the unredacted documents is helpful to the Court's determination. *See Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). Furthermore,

deliberative process privilege and the work product doctrine protect the memoranda from full disclosure. The Court examines each of these bases in turn.

### 1. Deliberative Process Privilege

The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tigue*, 312 F.3d at 76 (quoting *Klamath Water Users Protective Ass'n*, 532 U.S. at 7) (internal quotation marks omitted). The rationale behind the privilege is "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Id.* (quoting *Klamath*, 532 U.S. at 8-9 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975))).

---

because the government represented that the first document was an earlier draft of the second document, and then provided a lightly redacted version of the second document, it was unclear as to whether any parallel portions of the first document may be segregable. In such circumstances, the Court determined that *in camera* review would be an appropriate exercise of its discretion, in order to fully assess the validity of the exemption claimed by the government. *See, e.g., Halpern*, 181 F.3d at 295. The question for the Court upon *in camera* review is whether the information withheld properly falls within the scope of Exemption 5 and whether there is any segregable non-exempt material that should be separated from any exempt material and disclosed.

To qualify for this protection, the document at issue must be an inter-agency or intra-agency document that is "(1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually . . . related to the process by which policies are formulated." *Nat'l Council of La Raza*, 411 F.3d at 356 (internal quotation marks and citation omitted); *accord Tigue*, 312 F.3d at 76. The documents must not be "merely peripheral to actual policy formation" and "'must bear on the formulation or exercise of policy-oriented judgment.'" *Tigue*, 312 F.3d at 80 (quoting *Grand Cent. P'ship*, 166 F.3d at 482). Also, "[p]urely factual material not reflecting the agency's deliberative process is not protected." *Local 3, Int'l Brotherhood of Electrical Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988). Finally, if "the agency has chosen expressly to adopt or incorporate by reference a memorandum previously covered by Exemption 5 in what would otherwise be a final opinion," that memorandum would not be protected by Exemption 5. *Nat'l Council of La Raza*, 411 F.3d at 356 (internal quotations, alteration, and citation omitted).

As the Second Circuit has instructed, a document is predecisional when it is prepared in order to assist an agency decision-maker in arriving at his decision. *See Tigue*, 312 F.3d at 80. Here, it is plain from the Court's examination of the unredacted memoranda *in camera* that they were prepared in order to assist the Solicitor of the Department of the Interior in arriving at a decision regarding the Nation's land claim request and are thus predecisional.

First, with respect to the second document, which has been disclosed in redacted form, its predecisional character is apparent from the document itself. It is titled as a "Memorandum[,]" "From: Associate Solicitor, Indian Affairs[,]" "To: Solicitor[,]" "Re: Shinnecock Land Claim" and is typed on Interior's letterhead. (*See* Strayhorn Supp. Decl., Exh. 6.) Although there is no handwritten signature, the name "Thomas W. Fredericks[,]" who was in fact an Associate Solicitor during this time period, is printed beneath the signature line. (*See* Strayhorn Supp. Decl., Exh. 6.) Thus, the identity and position of the author and recipient of the document are clear, along with the place of those persons within the decisional hierarchy at Interior. *See Ethyl Corp.*, 25 F.3d at 1249 ("One relevant factor to be considered in determining whether the deliberative process privilege applies to a record is the identity and position of the author and any recipients of the document, along with the place of those persons within the decisional hierarchy.") (citing *Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)). The memorandum is furthermore divided into the following headings: (1) Introduction; (2) Factual Background; and (3) Discussion, with subdivisions (A) Tribal Status and (B) The Land Claim By The Shinnecock Is For [redacted material], and with a final paragraph beginning with the phrase, "[i]n conclusion, we recommend that . . . ." (*See* Strayhorn Supp. Decl., Exh. 6.) As the substantially disclosed contents of this memorandum make clear, the author of the document analyzes the validity of the Nation's land claim under the Non-Intercourse Act, including the tribal status of the Nation within the meaning of the Act, with the objective of advising the Solicitor regarding Interior's response to the Nation's land claim request. This is explicit in the very first sentence of the memorandum, which states the following: "The purpose of this memorandum is to recommend a response to the petition submitted by the Shinnecock Tribe, on February 8, 1978, in which they requested

that this Department advocate the return to the tribe of certain Shinnecock lands which were allegedly alienated in violation of the Non-Intercourse Act." (*See* Strayhorn Supp. Decl., Exh. 6.) Based on this language and the rest of the contents of the document, although it is undated, the Court has no doubt that this memorandum was prepared prior to the Krulitz letter and the March 1979 report, and in preparation thereof. At what point in the decision-making process this was authored is less clear. The Krulitz letter states that plaintiff's "request was the subject of many months of research and scrutiny by attorneys in the Office of the Solicitor. They presented me with their report in March of this year [1979], and I have now had the opportunity to review that report. It is my decision not to refer this claim to the Department of Justice." (Pl.'s 56.1, Exh. A.) However, given that "many months of research and scrutiny" were involved, and given the contents and context of the memorandum, the Court is satisfied, for the purposes of assessing the applicability of Exemption 5, that this memorandum preceded the Krulitz letter at some point in time within the period of Interior's decision-making process. In sum, because defendants can point to (1) "the specific agency decision to which the document correlates" and (2) "verify that the document precedes, in temporal sequence, the 'decision' to which it relates," *Grand Cent. P'ship*, 166 F.3d at 482 (quoting *Providence Journal Co. v. U.S. Dep't of the Army*, 981 F.2d 552 (1st Cir. 1992)), the second document is properly considered predecisional.

An *in camera* examination of the first document in conjunction with the unredacted second document reveals that it is similarly predecisional, with respect to the same decision-making process that culminated in the March 1979 report and the Krulitz letter. To start, the first memorandum is also titled "Memorandum[,]" "From: Associate Solicitor, Indian Affairs[,]" "To: Solicitor[,]" "Re: Shinnecock Land Claim[,]" with the distinction that it is not on Interior's letterhead. A line-by-line review of this document, side-by-side with the unredacted document, reveals that it is an earlier – perhaps significantly earlier – draft of the second document, which is consistent with its different formatting, including the lack of department letterhead. This is particularly evident in that the various handwritten edits and comments on the first document have been almost entirely incorporated into the second document. Moreover, the final pages in the first memorandum are not as well developed as that in the second memorandum and notably, the first memorandum is missing a conclusion towards the end of the document. For these reasons, as well as the reasons outlined above in connection with the second document, the Court finds that the first document is plainly predecisional in nature because it preceded the second document, which in turn preceded the March 1979 report and the Krulitz letter.

In addition to finding that the memoranda at issue are predecisional, the Court finds that they are also deliberative because they comprise part of the process by which a government decision was made and constituted "advisory opinions" or "recommendations." *Hopkins v. U.S. Dep't of Hous. and Urban Dev.*, 929 F.2d 81, 84-85 (2d Cir. 1991) (finding agency reports deliberative because the authors lacked authority to take final agency action and the reports contained staff inspectors' professional opinions and recommendations to higher officials that various agency actions should be taken). Both documents contain preliminary legal analysis that is typically protected from disclosure under Exemption 5 as deliberative material. *See Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) ("There can be no doubt

that such legal advice, given in the form of intra-agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative process rationale for Exemption 5."); *Nat'l Council of La Raza v. Dep't of Justice*, 339 F. Supp. 2d 572, 582 (S.D.N.Y. 2004) ("[D]ocuments containing in-depth legal analysis of a definitive character [] have usually been found to qualify for the deliberative process privilege."). Thus, these memoranda are exactly the kind of records that the privilege is intended to protect, where the documents "(i) formed an essential link in a specified consultative process, (ii) 'reflect[s] the personal opinions of the writer rather than the policy of the agency,' and (iii) if released, would 'inaccurately reflect or prematurely disclose the views of the agency.'" *Grand Cent. P'ship*, 166 F.3d at 482 (quoting *Providence Journal Co.*, 981 F.2d at 559) (alteration in original). The specific process was the months-long decision-making process referred to in the Krulitz letter, and it is apparent from the headings and language contained in the documents that they reflect the personal opinions of the writer(s), rather than of the entire agency.

The documents plainly are, moreover, "not merely part of a routine and ongoing process of agency self-evaluation," *Tigue*, 312 F.3d at 80 (internal quotation marks and citation omitted), but rather were specifically prepared for use by the Solicitor in order to respond to the Nations' request for assistance in its land claim. Although defendants are not *required* to point to a specific agency decision in order to establish that the deliberative process is involved, *see Sears*, 421 U.S. at 153 n.18 ("Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared."), in this case, the final agency decision to which these memoranda relate does not appear to be in any dispute. In any event, "while the agency need not show *ex post* that a decision was made, it must be able to demonstrate that, *ex ante*, the document for which executive privilege is claimed related to a specific decision facing the agency." *Tigue*, 312 F.3d at 80. Here, the memoranda's introductory remarks, which state explicitly that the purpose of the memoranda was to evaluate the Nation's land claim request, certainly satisfy this requirement.

In reaching this conclusion, the Court is particularly mindful that "[i]t is necessary in assessing a FOIA claim to understand 'the function of the documents in issue in the context of the administrative process which generated them.'" *Lead Indus. Assoc., Inc. v. Occupational Safety and Health Admin.*, 610 F.2d 70, 80 (2d Cir. 1979) (quoting *Sears*, 421 U.S. at 132). "Whether a particular document is exempt under [Exemption 5] depends not only on the intrinsic character of the document itself, but also on the role it played in the administrative process." *Id*. The Court has thus carefully considered not only the actual contents of the documents but also the context in which they were created, and finds without question that these memoranda were both predecisional and deliberative in nature.

Finally, even though the documents at issue are roughly thirty years old, it is the Court's view that the passage of time, even as considerable as it may be in this case, does not render the deliberative process covered by Exemption 5 inapplicable. As an initial matter, it is clear, as a matter of logic, that "[t]he predecisional character of a document is not lost simply . . . because of the passage of time[,]" *Bruscino v. Fed. Bureau of Prisons*, Civ A. No. 94-1955, 1995 WL 444406, at *5 (D.D.C. May 15, 1995) (internal citations omitted), *vacated in part on other grounds by*

*Bruscino v. Fed. Bureau of Prisons*, No. 95-5213, 1996 WL 393101 (D.C. Cir. Jun 24, 1996), and neither is its deliberative character, since whether or not a document was prepared in order to assist an agency decisionmaker in arriving at his decision or is actually related to the process by which policies are formulated are not contingent on any *ex post* time period. Instead, the circumstances surrounding the creation and use of the document are critical. *Cf. Halpern*, 181 F.3d at 300 (stating, in the context of analyzing Exemption 7(D) to FOIA, that "it makes no difference in our analysis whether now, in hindsight, the objective need for confidentiality has diminished; what counts is whether then, at the time the source communicated with the FBI, the source understood that confidentiality would attach").

Whether or not the intended purposes of the deliberative process privilege become moot or unattainable or outweighed by other policy considerations after a certain time period is a different question. *See Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 109 (S.D.N.Y. 2005) ("The privilege is a qualified privilege, a discretionary one that depends upon *ad hoc* considerations of competing policy claims." (quotations and citation omitted)). The deliberative process privilege aims to: (1) "protect[] creative debate and candid consideration of alternatives within an agency, and, thereby, improve[] the quality of agency policy decisions"; (2) protect[] the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon; and (3) protect[] the integrity of the decision-making process itself by confirming that officials would be judged by what they decided not for matters they considered before making up their minds." *Jordan v. Dep't of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc). Given these objectives, it is far

from clear that the effects of the privilege diminish in effectiveness or become inconsequential when older documents are involved. In other words, there is no clear rationale as to why or when the protections of the privilege should stop at some arbitrary point in time. In fact, it may be more problematic for courts to adopt a practice of determining such expiration times on a case-by-case basis. *See F.T.C. v. Grolier Inc.*, 462 U.S. 19, 29 (1983) ("Only by construing the exemption to provide a categorical rule can [FOIA's] purpose of expediting disclosure by means of workable rules be furthered."). Thus, although there is no Second Circuit or Supreme Court authority on the effective period of Exemption 5, the Court concludes that the Second Circuit's analysis of Exemption 7 is applicable in part to Exemption 5; namely, "the language of the statute contains no limitation of the sort [plaintiff] would have us adopt. It would have been a simple matter for Congress to have included a provision in FOIA requiring release of all documents of a certain vintage." *Diamond v. FBI*, 707 F.2d 75, 76 (2d Cir. 1983) (rejecting a claim that documents older than fifteen years should not be subject to Exemptions 7(C) or 7(D) to FOIA);[7] *accord*

---

[7] In that case, the Second Circuit did, however, suggest that the passage of time, to the extent that it resulted in death or voluntary disclosure, could so diminish the privacy interest protected by Exemption 7(C) as to amount to a waiver. *See id.* at 77. However, this narrow concept of waiver, which in any event is based on death and voluntary disclosure, two events not at issue here, was discussed in connection with Exemption 7(C), which protects investigatory records for law enforcement purposes where the production of such records would constitute an unwarranted invasion of privacy, and is inapposite to Exemption 5 where the interests being protected are not the privacy of individuals but, among other things, the integrity of the decisionmaking process and the need to protect and foster candid and creative debate. Thus, the

*Halpern*, 181 F.3d at 295 (noting, with respect to Exemption 1, "the passage of many years is an insufficient reason to require the release of documents."); *see also Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 346 (D.C. Cir. 1987) ("Congress has not established a time limitation for exemption 7(D) and it would be both impractical and inappropriate for the Court to do so."). Indeed, perhaps in recognition of these considerations, at least one court has noted that Exemption 5 may permanently preclude release of certain documents to the public. *See The Africa Fund v. Mosbacher*, No. 92 Civ. 289 (JFK), 1993 WL 183736, at *8 (S.D.N.Y. May 26, 1993); *see also Brinton v. Dep't of State*, 636 F.2d 600, 605 (D.C. Cir. 1980) (deliberative process exemption applied to legal opinions prepared by State Department's Office of Legal Advisor even though documents were several years old and noting that the State Department could retain the opinions for "an indefinite period of time"); *Lardner v. U.S. Dep't of Justice,* No. Civ. A. 03-0180 (JDB), 2005 WL 758267, at *11-12 (D.D.C. Mar. 31, 2005) ("As far as this court is aware, no court has ever held that documents fifteen (or twenty-three) years old cannot be protected by the presidential communications or deliberative process privileges . . . . Thus, this Court can find no basis in existing precedent for the notion that the presidential communications or deliberative process privileges are not routinely available in civil discovery for documents more than 15 years old."). In short, this Court also declines to reject the deliberative process privilege's applicability based on the substantial passage of time since these memoranda were authored.[8]

concludes that the principles underlying the deliberative process privilege, including the need to protect candid and creative debate within an agency and to protect the integrity of the decisionmaking process, are not overriden by the substantial passage of time in the instant case and shall not render Exemption 5 inapplicable under the circumstances of this case. Similarly, although some courts have found the deliberative process privilege to be inapplicable in situations where the government's decisionmaking process is the subject of the litigation, particularly where the cause of action is directed at the government's motivation or intent, *see, e.g., In re Subpoena Duces Tecum Served on the Office of the Comptroller*, 156 F.3d 1279-80 (D.C. Cir. 1998); *State of N.Y. v. Oneida Indian Nation of N.Y.*, No. 95 Civ. 0554 (LEK) (RFT), 2001 WL 1708804, at *6 (N.D.N.Y. Nov. 9, 2001), that is not the circumstance here. Specifically, the preliminary opinions and views of a subordinate within the Office of the Solicitor for the Department of the Interior prior to the issuance of the March 1979 report, even with respect to the Nation's tribal status, have little, if any, probative value with respect to the Nation's claims under the APA, *see Natural Resources Defense Council v. Fox*, No. 94 Civ. 8424 (PKL) (HBP), 1998 WL 158671, at *5-6 (S.D.N.Y. Apr. 6, 1998) ("the scope of judicial review permitted under the Administrative Procedure Act precludes inquiry into an agency's mental processes and . . . there is, therefore, no valid reason to pierce the privilege" (discussing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), and collecting cases)), or any other claims that the Nation has asserted in this or other litigation. *Cf. Int'l Paper Co. v. Fed. Power Comm'n*, 438 F.2d 1349, 1358-59 (2d Cir. 1971), *cert. denied*, 404 U.S. 827 (1971) ("[T]he views of individual members of the Commission's staff are not legally germane, either individually or collectively to the actual making of final orders. They could be grossly misleading, when applied to the ultimate findings and conclusions reached by the FPC as a whole, because at best they are only advisory in character. To allow disclosure of these documents would interfere with two important

_____

Court finds no such concept of waiver applicable under Exemption 5 in this case based on the mere passage of time.

[8] In any event, even assuming *arguendo* that the Court should weigh and balance the passage of time as a factor in the Exemption 5 analysis, the Court

## 2. Work Product Doctrine

Although the Court finds that the documents fall within the protections of the deliberative process privilege, it determines that the work product doctrine also applies to protect the documents from further disclosure. Moreover, as set forth *infra*, the Court concludes that defendants have not waived this protection with respect to the second document by releasing it in redacted form.[9]

The work product doctrine "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003).

---

policy considerations on which § 552(b)(5) is based: encouraging full and candid intra-agency discussion, and shielding from disclosure the mental processes of executive and administrative officers.") (footnote omitted).

[9] The Court notes that, even assuming *arguendo* that the passage of time affected the application of the deliberative process privilege, it would not impact the application of the work product doctrine. *See, e.g.*, *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 736 (4th Cir. 1973) ("[T]he immunity extended to attorneys' mental impressions, conclusions, opinions, or legal theories by the last sentence of F.R.C.P. 26(b)(3) does not expire once the litigation for which they are prepared has been concluded[.]"); *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa..*, No. 90 Civ. 7811 (AGS), 1994 WL 510043, at *6 (S.D.N.Y. Sept. 16, 1994) ("The purpose for which the work was originally prepared triggers the privilege, and this purpose does not change with the passage of time."); *Manchester v. Drug Enforcement Admin., U.S. Dep't of Justice*, 823 F. Supp. 1259, 1269 (E.D. Pa. 1993) ("[T]he protection of the work product doctrine does not evaporate with time.").

Specifically, it protects the "files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways prepared in anticipation of litigation." *A. Michael's Piano*, 18 F.3d at 146 (internal quotation omitted). The standard in this Circuit is whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998) (quotations and citation omitted) (emphasis in original). However, "[t]he mere relation of documents to litigation does not automatically endow those documents with privileged status." *State of Me. v. U.S. Dep't of the Interior*, 298 F.3d 60, 69 (1st Cir. 2002). Further, "[t]he privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *United States v. Nobles*, 422 U.S. 225, 239 (1975).

In this case, the Court finds that the attorney work-product privilege applies to both documents. As discussed *supra* in connection with the deliberative process privilege, these memoranda, which were authored by the Associate Solicitor of Indian Affairs to his superior, the Solicitor of the Department of Interior, were written in order to advise and assist the Solicitor of the Department of the Interior in arriving at a decision regarding the Nation's land claim request. The headings, context and substance of both memoranda make clear that they were prepared by or at the behest of counsel to the Secretary of the Interior. Furthermore, both memoranda evaluate the strength of the Nation's land claim under the Non-Intercourse Act and whether Interior should participate in the litigation on

the Nation's behalf. "Analysis of one's case 'in anticipation of litigation' is a classic example of work product, *see Sears*, 421 U.S. at 154, and receives heightened protection under Fed.R.Civ.P. 26(b)(3)." *Adlman*, 134 F.3d at 1196-97. It does not matter that Interior did not ultimately participate in such litigation, or whether or not such litigation in fact occurred. *See Grolier*, 462 U.S. at 28 ("[W]e hold that under Exemption 5, attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared.") The protection is also not defeated by the government's declaration that its legal analyses in the memoranda "implicate the Non-Intercourse Act in general, and thus could implicate other land claim litigation." (Strayhorn Supp. Decl. ¶ 24.) A document is prepared "in anticipation of litigation" if "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" *Adlman*, 134 F.3d at 1202 (emphasis in original) (quoting WRIGHT ET AL., 8 FEDERAL PRACTICE & PROCEDURE § 2024, at 343 (1994)). A specific prospect of litigation was the motivating factor in the creation of these memoranda; the fact that the resultant analyses may become helpful with respect to another litigation involving the same legal issues is of no import. *Cf. Grolier*, 462 U.S. at 25 (stating that it is immaterial whether work product was created for another litigation, as long as it was created in anticipation of some litigation); *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 586 (N.D.N.Y. 1989) ("work-product documents prepared for litigation in one action are protected from discovery in a subsequent related suit"). Indeed, this is consistent with the "because of" standard, and a contrary rule would undermine the purpose of the doctrine. Because the memoranda were authored in anticipation of litigation involving the Nation's land claim, the Court concludes that the documents are protected from disclosure by the work product doctrine.

The Court further concludes, after close *in camera* inspection of the unredacted second document, that the privilege has not been waived with respect to the withheld portions of the second document as a result of defendants' disclosure of that document in redacted form. The Court recognizes that selective disclosure of certain material, particularly to certain parties who are potential or actual adversaries, may constitute a basis for effectuating an implied waiver. *See, e.g.*, *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ("The waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to other parties."); *Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981) (finding waiver via disclosure to potential adversaries). However, the production of a document in redacted form does not automatically waive the protection as to its whole or to related documents. *See, e.g.*, *Weiss v. Nat'l Westminister Bank, PLC*, Nos. 05 Civ. 4622 (CPS) (MDG), 07 Civ. 916 (CPS) (MDG), 2008 WL 5115027, at *2 n.2 (E.D.N.Y. Dec. 3, 2008) ("[T]he production of partially redacted documents does not, in itself, constitute a waiver of any applicable privilege."); *United States v. Hoyvald*, No. 86 CR 715, 1987 WL 30638, at *2 (E.D.N.Y. Dec. 17, 1987) ("[T]he general rule is that disclosure of some documents does not destroy work product protection for other documents of the same character[.]" (quotations and citation omitted)); *cf. Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 104 (S.D.N.Y. 2000) ("[W]aiver of work product by disclosing that

work product to one's opponent waives the privilege only as to matter covered in the waived documents[.]"); *Grumman Aerospace Corp.*, 91 F.R.D. at 90 ("Disclosure to an adversary waives the work product protection as to items actually disclosed."). Instead, where partial disclosure is involved, it matters to whom such disclosure was made, what portions of the document were disclosed, and whether such disclosure was voluntary. Here, it is uncontested that the disclosure of certain material in the second document was made voluntarily by Interior and to an adversary, and, thus, the Court must analyze whether such disclosure constitutes waiver of the work product privilege such that a broader disclosure is warranted. Specifically, plaintiff argues that Interior's substantial disclosure of work product, including opinion work product, in the redacted document compels the disclosure of that document in full. As set forth below, the Court disagrees.

First, whether Interior's partial disclosure of the second document has waived protection of the whole document depends on the nature of the material disclosed. It is well established that opinion work product, in contrast to factual work product, is subject to heightened protection under the doctrine. *See Adlman*, 134 F.3d at 1197 ("[D]ocuments that tend to reveal the attorney's mental process – described by commentators as opinion work product[] – receive special protection not accorded to factual material.") (citations, alteration, and internal quotations omitted); *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 383 ("[O]pinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection than fact work product."); *Palazzetti Import/Export, Inc. v. Morson*, No. 98 Civ. 0722 (LBS) (FM), 2000 WL 1015921,

at *3 (S.D.N.Y. July 31, 2000) ("Although both factual and opinion work product fall within the scope of the doctrine, an attorney's mental impressions, conclusions, opinions, or legal theories typically are afforded greater protection.") (citing *Adlman*, 134 F.3d at 1197); *In re Leslie Fay Cos., Inc. Sec. Litig.*, 161 F.R.D. 274, 279 (S.D.N.Y. 1995) ("[W]hile factual materials falling within the scope of the doctrine may generally be discovered upon a showing of 'substantial need,' attorney mental impressions are more rigorously protected from discovery unless the doctrine's protection is otherwise waived.") (citing *Upjohn Co. v. United States*, 449 U.S. 383, (1981)). Therefore, even if Interior has waived the work product privilege with respect to factual matters contained in the second document, the protection afforded to opinion work product will remain intact so long as that higher protection has also not been waived.

In this case, the Court disagrees with plaintiff that opinion work product has been disclosed in the redacted form of the second document, thereby waiving work product protection as to all remaining portions of the document. *Cf. Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, No. 00 Civ. 9212 (DF), 2002 WL 31729693, at *13 (S.D.N.Y. Dec. 5, 2002) (waiver found where unredacted portion of produced document contained work product). Instead, defendants were careful to withhold only those portions of the document indicating the author's legal conclusions and recommendations, and thus that opinion work product is still entitled to the heightened protections of the doctrine. The redactions consistently follow phrases beginning with: "[b]ased on our review of those materials, as well as our review of pertinent case law, we conclude that"; "[a]ccordingly, we recommend that"; "[w]e believe"; "[i]t is therefore our recommendation"; "[w]e find"; and "[i]n

15

conclusion[.]" (*See* Strayhorn Supp. Decl., Exh. 6.) An *in camera* review of the unredacted document confirms that only legal conclusions, opinions, and recommendations were subject to redaction. Accordingly, the Court finds that Interior is entitled to withhold the remaining portions of the second document based on the protections of attorney work product afforded to an attorney's mental impressions, conclusions, opinions, or legal theories.

The Nation's main contention is that defendants' "pick-and-choose" disclosure requires that the entirety of the second document to be disclosed. (Pl.'s Supp. Letter, dated Feb. 20, 2009, at 2.) However, the cases upon which plaintiff relies reject partial disclosure pursuant to the privilege in circumstances that do not apply here. As a general rule, principles of fairness dictate against the partial disclosure of only those facts or mental impressions that are helpful to the disclosing party. *See, e.g., Bovis Lend Lease, LMB, Inc.*, 2002 WL 31729693, at *5, 13 ("[W]here a party selectively discloses certain privileged or work product material, but withholds similar (potentially less favorable) material, principles of fairness may require a more complete disclosure . . . . 'Fairness concerns' govern the [] question of whether, by producing a portion of the document, [the disclosing party] has waived work product protection for other work product material on the same subject.") (alteration and citations omitted); *Tribune Co. v. Purcigliotti*, No. 93 Civ. 7222, 1997 WL 10924, at *5 (S.D.N.Y. Jan. 10, 1997) (waiver may be invoked where "a litigant makes selective use of privileged materials, for example, by releasing only those portions of the material that are favorable to his position, while withholding unfavorable portions."); *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, No. 90 Civ.

5593 (MGC), 1994 WL 97572, at *3 (S.D.N.Y. Mar. 18, 1994) ("[W]e find that the disclosure of a substantial portion of the Casey memorandum is a waiver of any attorney-client privilege or work product protection which might otherwise have applied. Our finding of waiver here results from the application of the 'fairness doctrine,' *i.e.*, that disclosure of part of a privileged communication requires the disclosure of the remainder[.]"). However, in this case, defendants have disclosed all factual material, not only those that are helpful to their position in this litigation, and have redacted all legal conclusions. There is thus no indication that considerations of fairness or of the purposes of the work product doctrine warrant a finding of waiver here.

In fact, an examination of cases on waiver of the attorney work product privilege indicates that courts generally permit discovery of work product based on implied or subject-matter waiver only where the privileged communications have affirmatively been put at issue or when the defendant seeks to exploit the doctrine for a purpose inconsistent with the privilege, such as for the unilateral testimonial use of privileged communications. *See, e.g.*, *Nobles*, 422 U.S. at 240 (holding that once defense counsel elected to produce a defense investigator as a witness, the privilege was waived with respect to matters covered in the witness' testimony such that defendant could not use the privilege to sustain a "unilateral testimonial use of work-product materials"); *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 245 (E.D.N.Y. 2001) ("The scope of the work product privilege waiver is determined by considering whether a party has made affirmative and selective use of privileged documents, as well as the underlying purposes for the work product doctrine."); *Granite Partners, L.P. v. Bear Stearns & Co. Inc.*, 184 F.R.D. 49, 54

(S.D.N.Y. 1999) ("The work product privilege is waived when a party to a lawsuit uses it in an unfair way that is inconsistent with the principles underlying the doctrine of privilege. It is well settled that waiver may be imposed when the privilege-holder has attempted to use the privilege as both 'sword' and 'shield.'") (internal quotation marks and citation omitted)); *Herrick Co., Inc. v. Vetta Sports, Inc.*, No. 94 Civ. 0905 (RPP), 1998 WL 637468, at *3 (S.D.N.Y. Sept. 17, 1998) (holding that decision to use attorney's expertise in an expert witness capacity waived attorney-client and work product protections that might otherwise exist); *Purcigliotti*, 1997 WL 10924, at *5 ("Depending upon the extent and context of the partial disclosure, the waiver may be broad . . . or narrow . . . . Thus, for example, where there is a partial disclosure in the context of the litigation for the benefit of the privilege holder, there may be a complete subject matter waiver as to all communications on the subject. In contrast, where the disclosure is extrajudicial or non-prejudicial to an adversary, there may be no waiver or only a narrow one.") (citations omitted); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 473 (S.D.N.Y. 1996) (concluding that an affirmative use of a report and, by implication, the underlying witness interview statements, triggered a waiver of the privilege); *Amoco Oil Co. v. Hartford Accident & Indem. Co.*, No. 93 Civ. 7295, 1995 WL 555696, at *2 (S.D.N.Y. Sept. 18, 1995) (where the redacted portion of a document was "no more privileged than that which [had] been disclosed" and the redacted version revealed "most of the substance of the interoffice communication[,]" disclosure was ordered on the basis that the withholding party "may not use a privilege as both a sword and a shield"); *Variable-Parameter Fixture Dev. Corp.*, 1994 WL 97572, at *3 (requiring disclosure in a patent infringement case where, *inter alia*, defendant asserted as a defense

reliance on the advice of counsel and explaining, "[t]he line drawing which [defendant] proposes, between non-disclosure of infringement opinion, on the one hand, and enforceability and validity opinion, on the other, is artificial and unacceptably self-serving."); *Coleco Indus., Inc. v. Universal City Studios, Inc.*, 110 F.R.D. 688, 691 (S.D.N.Y. 1986) ("Kroft's affidavit and attached work product were proffered as a 'testimonial use' of materials otherwise privileged. Fairness requires that discovery not be limited only to those documents which have selectively been disclosed."). Indeed, even the court in *United States v. Aronoff*, 466 F. Supp. 855, 862 (S.D.N.Y. 1979), a case cited by plaintiff that analyzes implied waiver in the context of attorney-client privilege, explained that "[m]ost of the cases that have found implied waivers involved assertions by a client that made his confidential communications a material issue in a judicial proceeding, circumstances in which it would be patently unfair to uphold a claim of privilege. Where a privilege-holder has made assertions about privileged communications, but has attempted to bar other evidence of those communications, there is a serious danger that his assertions are false or misleading."[10] *Id.* at 862. Again, no

_____

[10] The second case cited by plaintiff, *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465 (S.D.N.Y. 1993), does state that cases involving implied waiver do not require that the plaintiff "demonstrate prejudice, such as, for example, proof that the privilege holder has disclosed only favorable materials" or "that the privilege holder is putting the privileged communications in issue in the litigation." *Id.* at 485 (footnote omitted). The court there further stated that "[i]t appears sufficient, for a waiver as to subjects discussed in the disclosed conversations, that the privilege holder has voluntarily revealed only some of the communications on the subject and has withheld others." *Id.* However, 1) defendants in this case

17

similar circumstances warranting disclosure apply in this case. Here, defendants have consistently withheld opinion work product, thereby demonstrating their interest in upholding the privilege as to the most sensitive and protectible elements of work product, and have disclosed all factual material, without regard to how such material strengthens or weakens their position on other issues in this litigation. Although the Nation argues that "the unredacted text . . . signal[s] that the redacted portions contain the conclusion that the Shinnecock Indian Nation is an Indian tribe[,]" (Pl.'s Supp. Letter, dated Feb. 20, 2009, at 3 n.4), such speculation is an insufficient basis upon which to find waiver where the legal conclusions themselves have clearly been withheld in a consistent fashion. Thus, no self-serving selection of facts or opinions has occurred in this case to warrant disclosure of the full document. *Cf. Amoco Oil Co.*, 1995 WL 555696, at *2 (requiring disclosure of redacted documents involving selective assertion of the privilege but not

requiring disclosure of redacted documents where no such selective disclosure was made).

Moreover, even in those cases in which courts have held that selective or partial disclosure has impliedly waived the privilege, courts have been reluctant to hold that implied waiver of non-opinion work product extends to opinion work product. In fact, the Court's research has yielded no case in this Circuit reaching such a conclusion. *See, e.g., In re Echostar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) (explaining that work product waiver extends only to "factual" or "non-opinion" work product concerning the same subject matter as the disclosed work product); *In re Martin Marietta Corp.*, 856 F.2d at 626 ("We think that when there is subject matter waiver, it should not extend to opinion work product[.]"); *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 485 (S.D.N.Y. 1993) ("I conclude that it is likely that the New York Court of Appeals would hold that a voluntary disclosure of privileged communications by deposition testimony in one case operates as an implied waiver as to all such communications concerning the particular matters addressed in the disclosed communications. Moreover, given the general tenor of the federal cases, it appears that a similar rule would apply to prior disclosure of work-product, at least if it does *not* disclose an attorney's thought process.") (emphasis added); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. at 473 (limiting "the piercing of the privilege to purely factual summaries of witness statements" in order to "avoid any danger that the waiver might encompass core attorney mental processes, for which we are required to demonstrate particular solicitude"); *see also McGrath*, 204 F.R.D. at 235 ("core work product must be afforded special protection when determining the scope of the waiver" and citing *Adlman*, 134 F.3d at 1204,

---

have revealed all factual material contained in the memorandum and not only some of it, and 2) even if implied waiver did apply, the court in *Bowne* acknowledged that such waiver would not extend to the opinions and legal conclusions of counsel. *See id.* Moreover, "since *Bowne*, courts in this Circuit have addressed claims of subject matter waiver a number of times and have consistently examined the issue in light of the fairness concerns[.]" *Falise v. Am. Tobacco Co.*, 193 F.R.D. 73, 85 (E.D.N.Y. 2000). Indeed, the Second Circuit has explicitly stated, in the context of discussing the proper scope of a waiver of attorney work product privilege, that the court should consider whether or not the testimony was "put at issue" or "there was deliberate, affirmative and selective use of privileged work-product materials by a party." *In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000).

as "implying that core work product may never be discoverable"). Thus, even assuming *arguendo* that there was partial disclosure of non-opinion work product in the second document (which there was not), there is no authority supporting the proposition that such a finding may overcome the heightened protections of opinion work product to compel full disclosure thereof. With respect to the possible disclosure of any opinion work product in the redacted second document, the Court has already determined, after *in camera* review, that only the pure legal conclusions and recommendations of the author have been withheld and no partial disclosure of such opinion work product was made. Although "the line between 'factual' work product and 'opinion' work product is not always distinct, . . . [w]hen faced with the distinction between where that line lies, . . . a district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product." *In re Echostar Commc'ns Corp.*, 448 F.3d 1294, 1302. The Court has kept such guidance in mind in determining that full disclosure is not warranted in this instance. *See In re Martin Marietta Corp.*, 856 F.2d at 626 ("There is relatively little danger that a litigant will attempt to use a pure mental impression or legal theory as a sword and as a shield in the trial of a case so as to distort the factfinding process. Thus, the protection of lawyers from the broad repercussions of subject matter waiver in this context strengthens the adversary process, and, unlike the selective disclosure of evidence, may ultimately and ideally further the search for the truth . . . . [W]e recognize that the line between opinion and non-opinion work product can be a fine one. But what should not be ordered to be disclosed are pure expressions of legal theory or mental impressions.") (footnote omitted).

Accordingly, there is no basis to compel the full disclosure of the second document, since the withheld portions properly constitute opinion work product and no waiver of the privilege with respect to those portions has occurred.[11] *Cf. Long-Term Capital Holdings v. United States*, No. 3:01 Civ. 1290 (JBA), 2003 WL 1548770, at *9 (D. Conn. Feb. 14, 2003) ("[B]ecause opinion work product is granted a greater protection than fact work product . . . the protection over the pure opinion work-product in this case, including the matters actually disclosed, may remain intact, thus precluding Respondent from access to the portion of the K & S opinion for which the attorney-client privilege was waived by Petitioners' disclosure.") (internal quotation marks and citations omitted); *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 175 (S.D.N.Y. 2002) ("[T]here is no indication that Terra Nova disclosed anything other than 'fact' work product . . . . This suggests that Terra Nova made an affirmative effort to protect the confidentiality of the 'opinion'

_____

[11] Furthermore, the Nation has not, on this motion, demonstrated that it is entitled to access the documents based on undue hardship or substantial need. *See* Fed. R. Civ. P. 26(b)(3). Although the Second Circuit has thus far declined to decide whether "opinion work product is ever discoverable upon a showing of necessity and unavailability by other means," it has indicated that "[t]he Rule is clear that, at a minimum, such material is to be protected unless a highly persuasive showing is made." *Adlman*, 134 F.3d at 1204 (citations omitted); *see also McGrath*, 204 F.R.D. at 233-34 (describing "core" opinion work product as "virtually sacrosanct" and that the Second Circuit in *Adlman* suggested that it may never be discoverable). In any event, the Nation has failed to make such a highly persuasive showing in this case warranting the extraordinary action of piercing the privilege with respect to opinion work product. *See supra* note 8.

work product of its attorneys. Accordingly, Terra Nova will not be compelled to produce any 'opinion' work product."); *Bernstein v Bernstein*, No. 91 Civ. 0785 (RR), 1993 WL 184201, at *1 (E.D.N.Y. May 24,1993) ("The testimony . . . revealed essentially factual (and non-privileged) information regarding these conversations and not mental impressions . . . . Such factual testimony does not operate as a waiver by plaintiffs of all information regarding these three witnesses, particularly documents containing mental impressions . . . .").

In any event, the second document is still protected by the deliberative process privilege, discussed *supra*, and plaintiff does not argue that such a privilege has been waived by the government's partial disclosure of the document in redacted form.[12] Accordingly, the Court finds that no additional disclosure of the second document is necessary based on waiver. Similarly, there has been no waiver of the information in the first document, which remains protected by the attorney work product doctrine and the deliberative process privilege, as discussed in further detail below.

### B. Segregable Information

Having concluded that Exemption 5 does apply to the documents at issue and that there has been no waiver, the Court proceeds to analyze whether any non-exempt material is reasonably segregable from those portions of the documents that are exempt. For the reasons set forth below, the Court finds no such material warranting disclosure.

Under FOIA, the defendant agency must disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions [that] are exempt." 5 U.S.C. § 552(b); *see Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996); *see also Donovan v. FBI*, 806 F.2d 55, 58 (2d Cir. 1986) (requiring agencies to "segregate their disclosable and non-disclosable portions"). "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). Further, the Second Circuit has instructed that "[a] determination of which if any portions of an otherwise exempt document are nonexempt must begin with a consideration of the nature of the document as a whole." *Lead Indus.*, 610 F.2d at 85. Generally, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117. However, "[i]f the requester successfully rebuts this presumption, the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld." *Id.*

With respect to the deliberative process privilege, it "does not, as a general matter, extend to purely factual material." *Natural Resources Defense Council, Inc. v. Nat'l Marine Fisheries Serv.*, 409 F. Supp. 2d 379, 383 (S.D.N.Y. 2006). "Thus, if the withheld document contains factual material, the Court must determine whether the factual material is '"inextricably intertwined" with the privileged opinions and recommendations such that

---

[12] *See In re Sealed Cases*, 121 F.3d 729, 741 (D.C. Cir. 1997) ("all-or-nothing" approach of subject matter waiver has not been applied to claims of deliberative privilege); *Marisol v. Giuliani*, No. 95 Civ. 10533 (RJW), 1998 WL 132810, at *7 (S.D.N.Y. Mar. 23, 1998) ("release of the document only waives [the deliberative process] privilege for the documents specifically released and not for related materials").

disclosure would compromise the confidentiality of deliberative information that is entitled to protection under Exemption 5,' or whether it is '"reasonably segregable" from the opinions and recommendations and therefore subject to disclosure.'" *Id.* (quoting *Hopkins*, 929 F.2d at 85 (internal quotation marks and citations omitted)). With respect to the work product doctrine, because the protection applies to both factual and opinion-related material, no segregability issues arise. *See, e.g.*, *Adlman*, 134 F.3d at 1196. Thus, even assuming *arguendo* that some portion of the first document is segregable – which the Court determines, for the reasons set forth below, is not the case – the first document would nonetheless be protected from disclosure in its entirety by the work product doctrine.[13]

Here, Interior seeks a ruling that, assuming only the deliberative process privilege applies, it has complied with FOIA and provided all reasonably segregable material to the Nation. As explained *supra*, the Court ordered Interior to submit unredacted copies of both memoranda for *in camera* review in part because the Court believed that such review of both documents would aid in its evaluation of the segregability of factual material in the first document.

First, as noted *supra*, the government has already provided to the Nation a redacted

version of the second document. With respect to this document, even plaintiff concedes that "[a]ll factual discussion in it seems to have been disclosed[.]" (Pl.'s Supp. Letter, dated Feb. 20, 2009, at 2 (footnotes omitted).) Consistent with the Court's findings detailed *supra*, the Court finds no further disclosure of this second document warranted because there is no remaining segregable, non-exempt material in that document.

As for the first document, now having reviewed the unredacted first document in its entirety, and having compared it carefully to the unredacted version of the second document for the possibility of comparable segregability, the Court finds that the factual information that is potentially segregable from the opinions and recommendations of the author, especially within the "Statement of Fact" section, is also contained in the second document – in many paragraphs almost verbatim – which has already been provided in redacted form to plaintiff. In light of the substantial disclosure already undertaken by the government, the Court declines to compel the disclosure, line-by-line, of most of the first memorandum's "Statement of Fact" section, as well as some portions of the remaining sections, which would require redactions of all handwritten commentary and notations and, in the end, provide no useful additional information to plaintiff. *See Lead Indus.*, 610 F.2d at 86 (stating that if the segment has already been disclosed on the public record, it need not be disclosed again).

In addition to redundancy, the practicability of segregability is another concern. The facts contained in the first document are sprinkled with handwritten commentary, which are protected by the deliberative process privilege, *see Nat'l Council of La Raza*, 339 F. Supp. 2d at 583 ("Drafts and comments on documents

---

[13] The Court notes that "relevant, non-privileged facts may be discovered from an attorney's files where their production is essential to the opponent's preparation of its case." *In re Six Grand Jury Witnesses,* 979 F.2d 939, 944 (2d Cir. 1992). However, the Nation has not demonstrated that any factual information that is protected by attorney work product should be produced based on substantial need, pursuant to Fed. R. Civ. P. 26(b)(3). *See supra* note 8.

are quintessentially predecisional and deliberative."), and not reasonably segregable in a redacted form. *Cf. Lead Indus.*, 610 F.2d at 86 ("if the proportion of nonexempt factual material is relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden, the material is still protected"). The result may be a substantially redacted segment that is rendered essentially meaningless or difficult to decipher.

More importantly, however, even if the facts were literally segregable, "[m]ore is required than merely plucking factual segments from the reports[,] there must be a sensitive reference to the relation of the factual segments to the report as a whole." *Id.* at 85. It is in this vein that segregating the material in the first document is unwarranted. To sever those spare facts, which in any event would be redundant if properly segregated, would compromise the private remainder of the document. *See E.P.A. v. Mink*, 410 U.S. 73, 91 (1972), *superceded by statute on other grounds,* 5 U.S.C. § 552(b)(1).

Indeed, any differences between the first memorandum, if potentially disclosed in redacted form, and the second memorandum would only be non-cumulative to the extent that they revealed the evolution of the draft. However, such a disclosure would infringe upon the deliberative process privilege. "If the segment did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so . . . such disclosure of the internal workings of the agency is exactly what the law forbids." *Lead Indus.*, 610 F.2d at 86. Thus, any further factual disclosure would not provide any additional information to plaintiff and if it did, it would only do so because it did in fact shed light on more than purely factual information.

The Court is aware that preliminary factual observations are not necessarily covered by the deliberative process privilege, even if they constitute preliminary findings that are subject to ongoing deliberation. *See Natural Resources Defense Council*, 409 F. Supp. 2d at 384. Although it may be true that "an agency does not have the same discretion in determining facts as determining policy," *id.* at 385, there remains a serious question as to the "objective" nature of the facts involved here, particularly to the extent that the factual information differs between the first and second documents. Disclosure is not required where non-exempt information is so intertwined with and provides insight into privileged material. *See Tigue*, 321 F.3d at 82. Indeed, when the facts are so intertwined with a policy recommendation and thereby embody the judgment of its author, revealing those facts is akin to revealing the opinions of the author and the give-and-take of the deliberative process. *See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977) ("In some circumstances . . . the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted by section 552(b)(5)."); *see also Sterling Drug Inc. v. Harris*, 488 F. Supp. 1019, 1025 (S.D.N.Y. 1980) ("In [*E.P.A. v. Mink*, 410 U.S. 73, 92 (1972)], the court held that materials reflecting deliberative or policy-making processes were exempt from disclosure, while purely factual, investigative matters must be produced, unless they are inextricably intertwined with policy-making recommendations so that their disclosure would compromise the confidentiality of deliberative information that is entitled to protection under Exemption 5."). The Second

Circuit has expressly recognized that "disclosure of factual portions . . . may reveal the deliberative process of selection" and where the factual segments' "function was not merely summary but analysis as well," involved "draw[ing] inferences and weigh[ing] the evidence[,]" and "clearly implicated [] the deliberative process by which the final standard was adopted and the reasoning behind it promulgated[,]" Exemption 5 applies to protect such factual portions. *Lead Indus.*, 610 F.2d at 83. In *Lead Industries*, the Second Circuit specifically stated that factual discussion in reports that were stated to be based on facts in the record, and included tabular or graphic summaries thereof, were "no less a part of the deliberative process" and "their disclosure would 'compromise the confidentiality of deliberative information.'" *Id.* at 85 (quoting *Mink*, 410 U.S. at 92).

In this case, the facts as presented by the author of the first memorandum are done in a fashion that "reveal[s] the 'evaluative' process by which [he, as a member of the decision-making chain] arrived at [his] conclusions and what those predecisional conclusions are." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 575 F.2d 932, 935 (D.C. Cir. 1978); *see also Hamilton Sec. Group Inc. v. Dep't of Hous. and Urban Dev.*, 106 F. Supp. 2d 23, 33 (D.D.C. 2000) (holding that even purely factual material is protectible if the deliberative process is revealed by the manner that the facts are selected or presented). Thus, although plaintiff asserts that "[a] fair and obvious inference . . . is that the March 1979 report contains a factual analysis of the status of the Nation as an Indian tribe under existing Interior policies[,]" (Pl.'s Mem. of Law in Opposition, at 10), the "factual analysis," to the extent that it is not already disclosed by the government in the second document, would reveal deliberations and the evaluative process.

In short, because in this case, the factual determinations in the first document may thus reveal Interior's exercise of discretion on some agency decision – the decision whether or not to support or partake in the Nation's land claim request – and the selection of and presentation of the facts reveal the judgment of the author and lay the foundation for his recommendation with respect to that agency decision, the Court finds such information, to the extent that it is already not disclosed within the contents of the second memorandum, exempt and non-segregable. *See Mead Data,* 575 F.2d at 934-35; *see also Lead Indus.*, 610 F.2d at 85 (the deliberative process protects summaries of facts that demonstrate "which facts in the massive rule-making record were considered significant by the decisionmaker and those assisting her"); *Wash. Research Project, Inc. v. HEW*, 164 U.S. App. D.C. 169, 181-82 (D.C. Cir. 1974), *cert. denied*, 421 U.S. 963 (1975) ("[T]he judgmental element arises through the necessity to select and emphasize certain facts at the expense of others[.]"); *cf. Natural Resources Defense Council*, 409 F. Supp. 2d at 385 (finding that defendants failed to demonstrate that disclosing preliminary findings would reveal the decision making process with regard to policy – as opposed to factual – determinations).

In conclusion, after a careful review of the documents conducted *in camera*, the Court determines that there is no reasonably segregable factual information in the first document warranting disclosure. As in *Tigue*, this Court finds that the first document is, to the extent that it contains information not already disclosed to plaintiff within the contents of the second document, "predominantly evaluative." 312 F.3d at 82. In sum, in light of the close factual-versus-deliberative nature of the material, the extensive unredacted portions previously

provided to plaintiff in the second document, and the interests underlying the protection of deliberative work in a highly preliminary draft, the Court declines to compel the disclosure of any portion of the first document.

Accordingly, because the government has withheld or redacted only those documents that it is entitled to withhold or redact under Exemption 5 of FOIA, defendants' motion for summary judgment dismissing plaintiff's FOIA claim is granted.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56(c), with respect to plaintiff's sixth claim for relief in the second amended complaint is granted, and plaintiff's cross-motion is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 9, 2009
Central Islip, NY

* * *

Plaintiff is represented by Evan A. Davis, Esq. and Christopher H. Lunding, Esq. of Cleary, Gottlieb, Steen & Hamilton, One Liberty Plaza, New York, New York, 10006, as well as by John M. Peebles, Esq., Steven J. Bloxham, Esq., and Darcie L. Houck, Esq. of Fredericks, Peebles & Morgan LLP, 1001 Second Street, Sacramento, California, 95814. Defendants are represented by Kevin P. Mulry, Esq. of the United States Attorney's Office, 271 Cadman Plaza East, Brooklyn, New York, 11201.